

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

<u>ALBURQUERQUE</u>      Division

**FILED**
AT ALBUQUERQUE

JUN 0 9 2006

MATTHEW J. DYKMAN
CLERK

CIV - 06 - 0 301 ; JC RLP

# MOTION UNDER 28 U.S.C. SECTION 2255,
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A
### PERSON IN FEDERAL CUSTODY

UNITED STATES OF AMERICA

F.C.I. TEXARKANA
PLACE OF CONFINEMENT

12367-097
PRISONER ID NUMBER

vs.

JUAN MANUEL CARBAJAL
MOVANT (Full name of movant)

CRIMINAL NO.  99-777-JC
CRIMINAL CASE NUMBER

(If movant has a sentence to be served in the <u>future</u> under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment.)

---

## INSTRUCTIONS - READ CAREFULLY

1.  This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

2.  Additional pages are not permitted except with respect to the <u>facts</u> which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

3.  Upon receipt, your motion will be filed if it is in proper order. No fee is required with this motion.

466

## MOTION

1.   Name and location of court which entered the judgment of conviction under attack:

     United States District Court - District of New Mexico

2.   Date of judgment of conviction:     May 11, 2001

3.   Length of sentence:     262 months confinement; five years supervised release

4.   Nature of offense involved (all counts):

     Count I: Continuing Criminal Enterprise; 21 USC § 848

     Count II: Conspiracy to possess with intent to distribute mari-

     juana; 21 USC § 846; Count III - VIII: Possession with intent to

     distribute marijuana; 21 USC § 841 (a), (b)(1)

5.   What was your plea? (Check one)

          ☒ Not Guilty          ☐ Guilty          ☐ Nolo contendere

     If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
     or indictment, give details:

     _____

     _____

     _____

6.   Kind of trial: (Check one)          ☒ Jury          ☐ Judge Only

7.   Did you testify at the trial?          ☐ Yes          ☒ No

8.   Did you appeal from the judgment of conviction?          ☒ Yes          ☐ No

9.   If you did appeal, answer the following:

     Name of Court:   United States Court of Appeals - Tenth Circuit

     Result:  Sentence reversed; remanded for resentencing on Count I alone

     Date of result:     February 5, 2004

- 3 -                                   CONTINUED ON NEXT PAGE

10.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

&#9635; Yes        □ No

11.  If your answer to 10 was "Yes" give the following information:

Name of Court: __United States District Court-District of New Mexico__

Nature of proceeding: __"Out of Time" Motion for New Trial pursuant to__

__Rule 33 Federal Rules of Criminal Procedure__

Grounds raised: __Appellant was denied effective assistance of counsel__

__because his counsel at trial had been disqualified from practice__

__of law prior to the trial and was not a lawyer at trial.__

Did you receive an evidentiary hearing on your petition, application or motion?

□ Yes        ■ No

Result: ____Motion for New Trial DENIED._____

Date of Result: _____

As to any *second* petition, application or motion, give the same information:

Name of Court: __United States Court of Appeals – Tenth Circuit__

Nature of proceeding: __Direct appeal from the denial of the motion for__

__new trial, supra., SEE: #11.__

Grounds raised: __Ineffective assistance of counsel as counsel was not__

__a lawyer when he tried Petitioner's case__

Did you receive an evidentiary hearing on your petition, application or motion?

□ Yes        ■ No

- 4 -                    CONTINUED ON NEXT PAGE

Result: _Affirmed the denial of the motion for new trial_____

Date of Result: _June 20, 2006_____

As to any *third* petition, application or motion, give the same information:

Name of Court: _____

Nature of proceeding: _____

_____

Grounds raised: _____

_____

_____

Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes          ☐ No

Result: _____

Date of Result: _____

Did you appeal to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion.

| | | |
|---|---|---|
| First petition, etc. | ☐ Yes | ☐ No |
| Second petition, etc. | ☐ Yes | ☐ No |
| Third petition, etc. | ☐ Yes | ☐ No |

If you did <u>not</u> appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

- 5 -                    CONTINUED ON NEXT PAGE

12.  State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

**CAUTION**: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you <u>should raise in this petition all available grounds</u> (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

<u>DO NOT CHECK ANY OF THESE LISTED GROUNDS</u>. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i)  Denial of effective assistance of counsel.

(j)  Denial of right to appeal.

CONTINUED ON NEXT PAGE

A.    Ground One: _____    SEE ATTACHED MEMORANDUM    _____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____    SEE ATTACHED MEMORANDUM    _____

_____

_____

_____

_____

B.    Ground Two: _____    SEE ATTACHED MEMORANDUM    _____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____    SEE ATTACHED MEMORANDUM    _____

_____

_____

_____

_____

_____

C.    Ground Three: _____    SEE ATTACHED MEMORANDUM    _____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____    SEE ATTACHED MEMORANDUM    _____

_____

_____

_____

- 7 -                    CONTINUED ON NEXT PAGE

D.   Ground Four: _____ SEE ATTACHED MEMORANDUM _____

Supporting FACTS (tell your story briefly without citing cases or law):

SEE ATTACHED MEMORANDUM

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them:

Ground I: Carbajal was denied the right to counsel. Trial counsel would would not have presented this issue, as he was the offender. 35 months after trial Carbajal discovered his counsel's fraud at trial, attempted to present the issue, and counsel attempted to show that trial counsel rendered ineffective assistance, rather than pursue the denial of counsel altogether. So, the issue was attempted, but counsel failed to note and argue that Carbajal was DENIED COUNSEL, rendering ineffective assistance. SEE: MURRAY v CARRIER, 477 US 478 (1986) freeing Carbajal from counsel's procedural default of this issue.

14.   Do you have any petition or appeal now pending in any court as to the judgment under attack?

☐ Yes      ☒ No

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)   At preliminary hearing: John Gerard Hedderman, California _____

- 8 -                    CONTINUED ON NEXT PAGE

(b)   At arraignment and plea: _____same_____

_____

(c)   At trial: _____same_____

_____

(d)   At sentencing: _____same_____

_____

(e)   On appeal: __Todd Hotchkiss, FRECHETTE & ASSOCIATES, P.C., P.O.

Box 26807, Albuquerque, New Mexico 87125; (505) 247-8558_____

(f)   In any post-conviction proceeding: _____same_____

_____

(g)   .On appeal from any adverse ruling in a post-conviction proceeding:

same

_____

_____

16.   Were you sentenced on more than one count of an indictment, or on more than one
      indictment, in the same court and at approximately the same time?

      ☐ Yes        ☒ No

17.   Do you have any future sentence to serve after you complete the sentence imposed by the
      judgment under attack?

      ☐ Yes        ☒ No

- 9 -                           CONTINUED ON NEXT PAGE

(a)   If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

(b)   And give date and length of sentence to be served in the future:

_____

_____

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

☐ Yes      ☐ No

Wherefore, movant prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

_____
Firm Name

_____
Address

_____
City, State & Zip Code

_____
Telephone (including area code)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on _____ June 7, 2006 _____ (date).

_____
Signature of Movant

Juan Manuel Carbajal
Reg. No. 12367-097

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JUAN MANUEL CARBAJAL-MORENO     §

    §

vs.     §    CIVIL ACTION NO. _____

    §

UNITED STATES OF AMERICA     §

---

Challenge to the conviction and sentence
in Case No. CR-99-777-JC
United States vs. Juan Manuel Carbajal-Moreno

---

JUAN MANUEL CARBAJAL-MORENO'S PRO SE MEMORANDUM OF  ARGUMENTS & AUTHORITIES
IN SUPPORT OF MOTION TO VACATE SENTENCE PURSUANT TO 28 USC § 2255
BY A PERSON IN FEDERAL CUSTODY

TO:    HONORABLE
    UNITED STATES DISTRICT JUDGE

    JUAN MANUEL CARBAJAL-MORENO, Movant Pro Se, ("Carbajal"), enters this his

memorandum of arguments and authorities in support of his motion to vacate

sentence pursuant to 28 USC § 2255, and this Carbajal would show in support:

I.

    As an initial matter Carbajal urges this Court's especial notice that

he appears pro se, and that due process places no greater burden upon him than

that he allege facts giving rise to the cause of action, SANDERS v US, 373

US 1, 22-23 (1963), facts which if proved would entitle  him to habeas relief,

TOWNSEND v SAIN, 372 US 293, 312 (1963), and due process requires this Court

to accord his claims a construction sufficiently liberal to embrace claims

for habeas relief, and to treat those claims arising from the facts alleged

whether those claims are expressed or merely implied by the facts alleged.

BOAG v MACDOUGALL, 454 US 364, 365 (1982); BOUNDS v SMITH, 430 US 817 (1977).

In this regard, Carbajal urges liberal construction of his claims before this

Court.

1

II.

## CARBAJAL WAS DENIED THE RIGHT TO COUNSEL

### A.  Statement of Facts

1.    Carbajal retained John Gerard Hedderman to represent him in this trial, believing Mr. Hedderman was a lawyer in the State of California, Mr. Carbajal's home state, and believing that Mr. Hedderman was a lawyer, and not a criminal.  Hedderman, a former California lawyer, held himself out to be an attorney, when in fact, he was not.  He was admitted to the California Bar on June 14, 1988.  His troubles with his law license began almost immediately.

2.    Mr. Hedderman was first suspended from the practice of law on August 16, 1993, just five years after he was licensed to practice.  The first suspension lasted until March 4, 1994.  For this perior of time Mr. Hedderman was not permitted to practice law in California.    (Ex. A).

3.    From the very beginning Mr. Hedderman was having difficulty with carrying on his business affairs as a lawyer in a professional manner.  He suffered civil judgments on November 23, 1993, August 7, 1995, September 9, 1998, January 8, 2001, February 5, 1998, March 13, 1996.  To avoid these judgments he declared bankruptcy September 1, 1998.  He suffered judgment liens being filed against him September 14, 1993, May 25, 1994, September 15, 1994, June 21, 1996, July 7, 1996, October 7, 1996, May 2, 1997, December 23, 1997, December 26, 1997, April 6, 1998, June 5, 1998, May 12, 2000, September 26, 2000, October 10, 2000, January 8, 2001, May 9, 2001, and December 4, 2001. The September 14, 1993, June 21, 1996 and DEcember 23, 1997 liens were I.R.S. liens, still not satisfied at the time of the representation of Mr. Carbajal.

4.    But that was not the end of Mr. Hedderman's problems.  On April 1, 1998 and again on Septeember 26, 2000 the State of California Employment Development Department filed UCC liens against him.  (Ex. B).  The records attached hereto  as Ex. A & B were provided by the State Bar Court of California, Christina Potter, Deputy Court Clerk, and are true and correct copies of the originals.  (Ex. C).

2

5.     During these financial problems as a lawyer, Mr. Hedderman began
to exhibit an incompetence as a professional.  On August 27, 1999 in State
Bar Court for the State Bar of California a "Notice of Failure to Respond"
was filed against Mr. Hedderman alleging that he failed to respond to the fol-
lowing allegations of professional misconduct:

A.     In Case No. 95-0-15019 Mr. Hedderman was charged with failing
to perform services for which he was employed in violation of Rules of Profession-
al condcut, Rule 3-110(A) when he was paid by Hung Vo, but he failed to perform
the duties for which he was hired by failing to properly served the defendants,
failing to timely prosecute the matter and bring it to trial within the statutory
limits, failing to pay the court fees, failing to keep scheduled appointments
with his client and failing to attend scheduled court hearings.  In failing
to communicate  with his client he violated California Business and Professional
Code § 6068(m).

B.     In Case No. 97-0-10309 Mr. Hedderman was charged with wilfully
violating the Rules of Professional Conduct, Rule 3-110(A) by again failing
to perform the services for which he was employed, when on September 11, 1995
Mr. Hedderman was hired by Roberto Viramontes to represent him in a Chapter
7 bankruptcy proceeding.  Mr. Hedderman charged and collected a $2,000.00 fee,
and he failed to file the bankruptcy petition, failed to file the proper sche-
dules, took no action to cure deficiencies which resulted in dismissal of the
bankruptcy, subjected his client to garnishment of wages. After being construc-
tively terminated as counsel for Mr. Viramontes Mr. Hedderman compounded his
problems by failing to return unearned fees to Mr. Viramontes.

C.     In Case No. 97-0-12290 Mr. Hedderman was charged with again
charged with failing to perform services, this time by failing to attend court
despite notice of proceedings. Mr. Hedderman did not just miss a single or
a couple of hearings. Mr. Hedderman failed to appear on September 23, 1996,
October 28, 1996, November 25, 1996, December 23, 1996, January 27, 1997,

3

FEbruary 24, 1997, and when he failed to appear on that date, the Court entered a $750.00 sanction against Mr. Hedderman for his failure to appear. The case was re-scheduled for March 4, 1997, and Mr. Hedderman, again, failed to appear, whereupon the hearing was re-scheduled to a future date to occur without Mr. Hedderman. Mr. Hedderman not only did not appear, he never paid the court sanction for his failure to appear. Further, when contacted by the State Bar of California in the investigation of his actions Mr. Hedderman refused to cooperate with the State Bar, and basically ignored the Bar, violating Business and Professions Code § 6068(i).

D. Mr. Hedderman was employed by Patricia Monroy, and in Case No. 97-O-14352 he was charged with, again, failure to "promptly and competently" perform the services for which he was employed, again in violation of Rules of Professional Conduct Rule 3-110(A). The fee paid was $1,500 to simply trans-fer property from the name of Ms. Monroy's mother to the names of Monroy's uncle. The work was never done, and when called on it , again, Mr. Hedderman refused to cooperate with the investigation, and he refused to return the unearned fees. (Ex. D).

6. Mr. Hedderman finally found time to answer these allegations on November 1, 1999. (Ex. D). In this answer he denied, generally, without specific comment, the fourteen (14) count, seventy-one (71) paragraph complaint against him. (Ex. D).

7. On April 19, 2000 the State Bar Court of the State Bar of California settled the cases by entering a 30 day actual suspension and 3 year probation to Mr. Hedderman. That adjudication was predicated upon the following findings:

A. That Mr. Hedderman's "... misconduct evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct..." and "... At the time of the stipulated act or acts of professional misconduct Mr. Hedderman suffered extreme emotional difficulties ... which ... was directly responsible for the misconduct...". (Ex. E).

4

B.   Mr. Hedderman was found to need AA meetings, and he was ordered to attend and provide proof of attendance. And finally, Mr. Hedderman was found in need of taking the Multi-State Ethics Exam and provide proof of passing it.   (Ex. E).   The suspension became effective September 29, 2000, and it was to have lasted only to October 29, 2000, when Mr. Hedderman was to have commenced his three (3) year probation, AA meetings and ethics classes.

8.   Unfortunately, more problems began to arise surrounding Mr. Hedderman's practice of law. The problems began when Mr. Hedderman, who was obviously suffering from a drinking problem, ATTENDED NOT A SINGLE AA MEETING as ordered. (Ex. F).   On November 30, 2000 Mr. Hedderman voluntarily resigned from the practice of law because additional charges were pending against him regarding is unethical practice of law. (Ex. G).   In his voluntary resignation Mr. Hedderman agreed: "... I further agree that upon the filing of this resignation (which he did on November 30, 2000)... I will be transferred to inactive membership of the State Bar. Upon such transfer, I acknowledge that I will be ineligible to practice law or to advertise or hold myself out as practicing or as entitled to practice law...".   (Ex. G).   Mr. Hedderman was "resigned" from the practice of law February 3, 2001. (Ex. A).

### B.   Arguments & Authorities

1.   The problem presented with representation by a person like Mr. Hedderman is not simply one of competence.  Mr. Hedderman may very well have been more competent than any other lawyer in the courthouse.  That is not likely, given his past, but it is certainly possible.  However, the problem with Mr. Hedderman is that it cannot be said that he was acting as "counsel" when he represented Carbajal.  First, he defrauded Carbajal by holding himself out as being "counsel", when clearly he was not.  He was doing what he had been doing since 1994 when he first began, or it can be proven that he began, taking fees from individuals who were not fluent in English, and then doing nothing to justify the fees.  His record speaks for itself. When he was caught doing

5

when people finally complained, he did nothing to set the record straight.
He ignored the allegations made against him, and he went about doing what he
was doing, collecting fees and doing no legal work. By the time Carbajal had
retained him he was already facing disbarment, he knew it, and he was just
buying time, collecting as much as he could, before the final shoe dropped
on his legal career.

    2.    When analyzing the type of lawyer that Mr. Hedderman was for his
client, in this case Mr. Carbajal, the Court need only look to what kind of
lawyer Mr. Hedderman was for himself. When allegations were made against him,
alleging all sorts of illegal, unethical conduct, did he stand and fight and
deny the allegations? No, initially, he simply ignored them, and he went about
his unethical practice. His was not a course of action calculated to even retain
his law license, much less any sort of dignity and prestige in the community.
No, he complained that his unethical behavior was because he had problems,
clearly linked to alcohol, and he arranged for a probation to get his affairs
straight. He did not last the 30 days suspension, much less the year that
was to follow, before even more problems arose. MR. HEDDERMAN · ATTENDED NOT
A SINGLE AA MEETING. He attended no ethics seminars. He demonstrated no compunc-
tion to act ethically, or even any curiosity about the rules of ethics. All
he did was to continue collecting fees.

    It cannot be said that such a person can be wholly free from fear of
what might happen if a vigorous defense should lead the prosecutor or the trial
judge to inquire into his background and discover his lack of credentials.
Mr. Hedderman was engaged in justifying an enormous fee he had collected, and
clearly, he was not going to rock the boat one iota to expose his now unlawful
acts in appearing for Mr. Carbajal.    The I.R.S. still had liens against him,
and he was in federal court practicing law without a license.

    Mr. Hedderman's conduct must be viewed in the proper light. At the time
he was appearing for Mr. Carbajal he was committing a crime. He was not acting
as counsel.

                                        6

3.    So, the issue is whether Carbajal was denied counsel.  The first

question is whether the Sixth Amendment right to counsel is even implicated

becasue we are dealing with retained, rather than appointed, counsel.  After-

all, Carbajal retained Mr. Hedderman, and he was not appointed by the Court.

But, any distinction between retained and appointed counsel for purposes of

the Sixth Amendment right to counsel seems to have been swept from the boards

by CUYLER v SULLIVAN, 446 US 335, 344-45 (1980):

> "A proper respect for the Sixth Amendment disarms petitioner's
> contnetion that defendants who retain their own lawyers are
> entitled to less protection than defendants from whom the State
> appoints counsel ... The vital guarantee of the Sixth Amendment
> would stand for little if the often uniformed decision to retain
> a particular lawyer could reduce or forfeit the defendant's en-
> titlement to constitutional protection. Since the [government's]
> conduct of a criminal trial itself implicates the [government]
> in a defendant's conviction, we see no basis for drawing a dis-
> tinction between retained and appointed counsel that would deny
> equal justice to defendants who must choose their own lawyers."

Having determined that Carbajal cannot be treated differenctly simply

because Mr. Hedderman was retained, rather than appointed, the question arises

whether in the facts and circumstances of this case alone, Carbajal is entitled

to a per se application of the Sixth Amendment guarantee of counsel, to wit:

that since Carbajal was not represented by counsel, that such is a per se vio-

lation of the right guaranteed by the Sixth Amendement, and Carbajal is auto-

matically entitled to a new trial.  Carbajal asserts that if he is not represented

by counsel and has not competently and intelligently wavied his constitutional

right to counsel, the Sixth Amendment stands as a jurisdictional ar to a valid

conviction and sentence depriving him of his liberty.  This Court's jurisdiction

at the beginning of the trial was subject to being lost during the course  of

the proceedings, as the Sixth Amendment requires, by providding counsel for

an accused who is unable to obtain counsel, one who has not knowingly and intel-

ligently waived counsel.  Clearly if this requirement of the Sixth Amendment

is not complied with this Court could not proceed further.  The judgment and

conviction pronounced by a court without jurisdiction is void, and one imprisoned

thereunder my  obtain his release by habeas corpus. ID., JOHNSON v ZERBST,

supra., at 304 US at 465-69.

Empirically, the per se application of the Sixth Amendment right to counsel applies. If Carbajal has simply been forced to continue trial without counsel, who would be heard to say that this was not a Sixth Amendment violation? And, if Carbajal had been appointed counsel who was not counsel at all, but just a spectator in the courtroom. Who would say that this was not a violation of the Sixth Amendment? To determine otherwise is simply an invitation to error and cannot be tolerated.

However, for good reason, the Tenth Circuit, in well reasoned cases, has steadfastly refused to apply a "per se" rule so as to disqualify any lawyer as "per se" rendering ineffective assistance. US v STEVENS, 978 F2D 565, 568 (CA10 1992). However, the "per se" rule that does not exist in this Circuit holds as follows: "We hold that where, as here, a licensed attorney is disbarred without notice, the attorney's representation is not per se ineffective." ID., STEVENS, supra., at 978 F2D at 568.

However, in STEVENS, supra., the lawyer did not know that he had been disbarred. The Court did not know. The defendant did not know. The lawyer did not know that he was not authorized to practice, but in Carbajal's case, Mr. Hedderman DID. And therein lies the crucial difference.

Mr. Hedderman knew that he was not a lawyer. Before he even entered an appearance for Carbajal he had voluntarily surrendered his license. He was not a lawyer, and he had not been a lawyer for years previous to Carbajal even coming on the scene. The record shows that he had been stealing client's money since September, 1994, continuously to the very time he was retained by Carbajal. The record provided here indicates that Mr. Hedderman did nothing for his clients, except take their money. And the record here indicates that not a single motion was filed, not a single document, and no investigation was done, no witnesses were called at trial, no valid cross examination was conducted. Basically, Mr. Hedderman sat on his hands throughout the representation of Carbajal. And why? Because he had no intention of acting as counsel.

8

How can anyone claim that Mr. Hedderman was even proceeding "as counsel", when he had voluntarily relinquished his right to practice, with other charges pending against him. He was on California State Bar probation when this was done, a probation that certainly would not have permitted him to lie to a court about not being permitted to practice. He was not acting as counsel, rather he was acting as a criminal, perpetrating criminal acts everytime he represented himself as a lawyer. And most important, he was most interested in not getting caught himself, rather than looking out for the best interests of his client. Carbajal deserved better.

The best evidence that Carbajal was being represented by a criminal, and not a lawyer, is the record itself. Counsel would not lie to a court. A criminal would.

On January 28, 2001 Mr. Hedderman filed his "Application to Appear as Counsel Pro Hac Vice". (Ex. H). In this application Mr. Hedderman states: "... Applicant has been admitted to practice before the Supreme Court of California-1987...". That, right there was the FIRST LIE. Mr. Hedderman was admitted to practice June 14, 1988, and the mistake is not a small one. Mr. Hedderman knew that he was not permitted to practice, and he gave the wrong year so as to divert any investigation that might reveal this fact. The "Hedderman" ad-mitted to practice June 14, 1988 could not practice, not the one admitted in 1987. But further, Mr. Hedderman states: "Applicant is in good standing with the courts stated above. [and] Applicant is not currently suspended or disbarred from any court." First, less than a week after this application was signed by Mr. Hedderman, he would resign from the practice of law in California, "with charges pending." At the time he made these claims he was suspended from the pracitce of law, the suspension having been entered August 30, 2000 by the Supreme Court of California (Ex. I). So, Mr. Hedderman was not acting "as counsel",rather as a "criminal", and he was just lying to this Court with im-punity, and his lies were calculated to lead this Court to believe he could appear as counsel, when he could not, legally.

9

But then Mr. Hedderman told his second lie. He appeared May 8, 2001, and he announced to the Court that he was "ready for trial", and jury selection commenced.    He was nowhere near "close to ready for trial".  He had not been a lawyer, having tendered his resignation on November 30, 2000, for five (5) months. This is not a case of Mr. Hedderman finding out that he had been disbarred while a trial was ongoing, like in STEVENS and its progeny, rather this was a case of a criminal misrepresenting to the Court that he was, indeed, a lawyer, qualified to practice and ready for trial. Clearly, Mr. Hedderman lied, not once now, but twice.

But he lied about even being ready for trial.  Mr. Hedderman appeared with Carbajal on or about March 8, 2001 and was arraigned on the Sixth Superceding Indictment charging one count of Continuing Criminal Enterprise, in violation of 21 USC § 848, one count of Conspiracy to Possess Marijuana with Intent to Distribute in violation of 21 USC § 846, and six individual possession counts with intent to distribute in violation of 21 USC § 841(a)(1), (b)(1)(B). Two years prior to the commencement of this trial the Supreme Court had determined that conspiracy was a lesser included offense of Continuing Criminal Enterprise allegations, did not constitute separate crimes, and as a result they could not be sentenced separately if convictions resulted from both charges. Nonetheless Mr. Hedderman permitted Carbajal to face a jury trial on a conspiracy count, along with a continuing criminal enterprise count, as well as, obtain convictions on both counts as well as sentencing on both counts.  The case was RICHARDSON v US, 526 US 813 (1999), and at a bare and forgiving minimum, "ready for trial" counsel would have objected to the Court proceeding to trial on both counts. Mr. Hedderman said nothing, evidencing something, empirically. Mr. Hedderman was nowhere near ready to act as "counsel" in Carbajal's trial  He was THERE FOR THE MONEY. Period. Nothing else mattered.  He had no intention of acting as "counsel", and he did not act as "counsel".  Carbajal was presumed innocent. Mr. Hedderman was in the process of committing a crime, a crime that

10

this Court, and the government, now knows that he has committed. The question should not be whether Mr. Carbajal is entitled to a new trial. That issue is the simple one. The question is why hasn't the government had Mr. Hedderman arrested for practicing law without a license, or at a bare and forgiving minimum, obstruction of justice for his conduct in lying to this Court?

Carbajal deserved better. What he has been faced with, however, since discoverying that his counsel was, in fact, a lying criminal and not a lawyer, upon revealing this information to this Court and the government, is a series of efforts calculated to sweep this matter under the rug, and guarantee that he, as the victim, will receive no relief whatsoever from a blatant, empirical denial of his right to counsel. And in the process Mr. Hedderman, the criminal, has evaded prosecution, due solely to the expedient that prosecuting him for his crimes will remove any defense the government might have to opposing a new trial for Mr. Carbajal.

One of two things must occur. Either this Court finds that Carbajal was denied his right to counsel, which empirically he was, and grants Carbajal a new trial. Or, in the alternative, the government and this Court turn a blind eye and a deaf ear to the repeated lies by Mr. Hedderman, forget the criminal acts committed by Mr. Hedderman in open court, all for the purpose of defending the "system" of justice that resulted in Carbajal's conviction and sentence.

WHEREFORE, Carbajal prays this Court enters an Order vacating the judgment of conviction and sentence in this case, to the end that Carbajal is granted a new trial. Carbajal prays for any and all such other relief to which he may show himself entitled. Carbajal prays for general relief.

In the event this Court enters an Order denying relief on this ground, Carbajal prays the Court enters written FINDINGS OF FACT and CONCLUSIONS OF LAW in support of such Order. If the Court is inclined to deny relief, at a bare and forgiving minimum, Carbajal prays the Court conducts an evidentiary hearing on this issue to permit him the opportunity to develop the issue for appeal.

III.

### THE DISTRICT COURT IS RESPONSIBLE FOR THE DENIAL OF COUNSEL

#### A.   Statement of Facts

1.     January 28, 2001 Mr. Hedderman filed his application to appear
as counsel pro hac vice. (Ex. H).  In that application he averred that he was
"in good standing" with the State Bar of California.  That was a lie.  On that
lie this Court, by and through the Magistrate Judge, granted Mr. Hedderman
provisional permission to represent Carbajal "... contingent on his full
compliance with D.N.M.LR-CIV 83.3, no later than January 31, 2001."  This
Court noted in granting "provisional" permission to appear for Carbajal that
Mr. Hedderman had, at the time of filing his application, failed to provide
the Court with information required by the Local Rules. (Ex. J).  Of course,
Mr. Hedderman made no effort to comply with the Local Rules, as ordered, and
he could not have complied.  He had already resigned his license, and the State
Bar of California would enter his resignation February 3, 2001.  (Ex. A).

2.     Of course, the Local Rules require that Mr. Hedderman, in order
to participate in this case, must have been in good standing with "... the
bar of any other state ...", and that he associate with a member of the Federal
Bar.  (Ex. K).  Mr. Hedderman associated with Local Counsel, Carmen E. Garza,
(Ex. L), but he failed altogether to provide proof that he was in good standing
with the bar of any other state.  And of course, it is not in dispute that
Mr. Hedderman could never have provided this proof.

#### B. Arguments & Authorities

1.     The question is who was responsible for guaranteeing that Mr. Hed-
derman was qualified to practice.  The government, incredibly, would have Mr.
Carbajal responsible for such, notwithstanding the fact that Mr. Hedderman
was a lawyer when retained by Carbajal. He was on his way out the admitted
to practice door at the time, a fact he did not share with Mr. Carbajal, but
nonetheless, he was admitted to practice. Of course, he had been suspended,
and that fact was not shared with Carbajal, but was it really Carbajal's re-

12

sponsibility? If that was the case, why would the Magistrate Judge, after noting that Mr. Hedderman had not provided proof that he was in good standing with the bar of another state, grant only provisional permission for Mr. Hedderman to appear for Carbajal? Why wouldn't the Magistrate Judge hold Carbajal responsible for providing such proof? The answer is simple. It is the Court, and the participants in Court proceedings, that provide information to the Court, not the defendant. Though the government would have Carbajal held to this mythical standard there is not a scintilla of case authority to support such a position.

2.    Who would argue that it is the Court's responsibility to guarantee the right to counsel? When Miranda warnings are violated by police, Courts intervene. When defendants make their first appearances in federal court for arraignment, courts first determine the issue of counsel.

3.    "Counsel" within the Sixth Amendment means a person authorized to practice law. US v BROWN, 600 F2D 248, 257 (CA10) cert. den., 444 US 917 (1979); US v IRVIN, 561 F2D 198, 200 (CA10 1997). The term "counsel" does not include a "lay person". US v GRISMORE, 546 F2D 844, 847 (CA10 1976).

4.    And as this must be even stated formally, the denial of Carbajal's right to counsel prejudiced Carbajal and denied him due process of law. Carbajal's Sixth Amendment right to the assistance of a licensed attorney in good standing protects his contemporaneous companion Sixh Amendment right ot a fair trial, and as a fundamental constitutional structure within the Sixth Amendment itself becomes further protected by Carbajal's Fifth Amendment right to due process of law. HOLLOWAY v ARKANSAS, 435 US 475, 489 (1978); FARETTA v CALIFORNIA, 422 US 806, 818 (1975). The Sixth Amendment rights are basic to our adversary system of criminal justice. They are part of the due process of law that is guaranteed by the Fifth Amendment. Who else but this Court should be looked to for protection of the right to due process of law? Clearly, the denial of counsel is specifically attributable to this Court, and Carbajal is entitled to relief.

WHEREFORE, Carbajal prays this Court enters an Order vacating the convic-
tion and sentence in this case, to the end that Carjabal is granted a new trial.
In the event that this Court is inclined not to grant relief on this ground,
Carbajal prays that the Court conducts an evidentiary hearing to the end that
Carbajal will be permitted the opportunity to develop this issue for appeal.
And in the event this Court enters an Order denying relief, Carbajal prays
the Court enters written FINDINGS OF FACT and CONCLUSIONS OF LAW in support
of such order. Carbajal prays for any and all such other relief to which he
may show himself entitled. Carbajal prays for general relief.

IV.

## CARBAJAL WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

### A.   Statement of Facts

1.    No objection was made by Mr. Hedderman, pre-trail, or otherwise,
to the trial of a conspiracy case and a continuing criminal enterprise case
in the same trial. The two crimes being tried together permitted the govern-
ment, on nothing more than a whim, to prove the existence of the continuing
criminal enterprise through hearsay that was admitted as in furtherance of
the conspiracy in the trial. Had the conspiracy trial been severed, the hear-
say that was admitted could not have been admitted in the separate trial. State-
ments that are hearsay are admissible in a conspiracy trial, as being in fur-
erance of the conspiracy, but such statements are not admissible if no  conspir-
acy is being tried. Mr. Hedderman made no objection, notwithstanding the Supreme
Court's decision in RICHARDSON v US,  526 US 813 (1999) two years before Carbajal's
trial commenced.

2.    Mr. Hedderman did not perform as counsel during the trial.  He
"sat on his hands" during the examination of witnesses, objecting to nothing,
and the failure to object permitted the government to introduce hearsay with
impunity throughout the trial, to wit:

A.    J.R. Long.  Long testified as to the loading of dump trucks
with marijuana, from hearsay, without objection. (R.II, 184); about Justin

14

Comer's hearsay statements about stash houses used to store marijuana, one
being at 22 Latigo Trail. (R.II, 192); about seizing a helmet used as a dis-
guise to transport marijuana. (R.II, 203); about how Carbajal used aliases,
and how those aliases were tied to seizure of the exhibits seized by police
in this case. (R.II, 203); about how Carbajal used the name "Manuel Moreno"
(Ex. 23). (R.II, 204); about how Carbajal used the alias "Juan Carbajal", (Ex.
36), a mobile home rental agreement. (R.II, 205); about how Carbajal used the
alias name "Juan Carbajal" (Ex. 26), a permit to drive a motor home in Mexico.
(R.II, 206); about how Comer told Long about Gregory & Diane Hedgecock, aka,
"Jack and Diane". (R.II, 208); about how Carbajal used the alias name "Juan
Moreno" (Ex. 30), for a New Mexico drivers license. (R.II, 213); about how
Comer identified Carbajal in a photo line-up. (R.II, 216); about how real estate
agent Debbie Rogers gave the names of the persons who rented houses involved
in the investigation. (R.II, 217); about how Long "determined" that Hedgecock
was calling Carbajal. (R.II, 222); about "finding out" that Carbajal got a
New Mexico ID card in Juan M. Carbajal, 223 Latigo Drive, Silver City, signed
Juan M. Moreno. (R.II, 225); that Carbajal used the name Juan M. Moreno. (R.II,
226); that "we found out" that Carbajal's parents lived at 1801 F. Jefferson,
Stockton, California. (R.II., 228); about Hedgecock's custodial statement about
his involvement in marijuana trafficking with Stockton, California as the ulti-
mate destination. (R.II, 231), this being especially harmful as Hedgecock was
"dead" and could not testify. (R.II, 232); that the entire search conducted
first by the investigators was based upon hearsay, the consent given by Hedgecock
with no written proof, other than Hedgecock's oral consent and Long's testimony
that such occurred. (R.II, 235); how the police "determined" that Carbajal
was not employed. (R.II, 234); Hedgecock's conversation with Long about how
Hedgecock used his residence to unload and repackage marijuana before taking
it to Stockton, California, because they could no longer use the 223 Latigo
Drive house after the bust there March 27, 1999. (R.II, 239-240); Hedgecock's

15

story to Long about an Express Mail package from Manuel Moreno containing cash.
(R.II, 248); Hedgecock's connecting Carbajal to the payments for a Vogue Motor
home, Carbajal providing the money for the payments made by Hedgecock. (R.II,
253); Hedgecock's hearsay about transporting marijuana from Tucson, Arizona
to Stockton, California. (R.II, 253-254); Hedgecock tying himself to the alias
name, "Jack Novi". (R.II, 257); Glenn Duggins' hearsay to Long about hotels
he stayed in while hauling marijuana. (R.II, 257); the Hedgecocks' telling
Long they acquired the Vogue Motorhome on February 11, 1998 and went with it
to Best Western to meet Carbajal to wait for marijuana to be delivered. (R.II,
260-261); Hedgecocks tell Long they picked up marijuana on February 12, 1998
and when to Stockton, California.(R.II, 262); Hedgecocks talking to Long about
their marijuana business conducted off LaCholla Blvd., Tucson, Arizona. (R.II,
273-274); Duggins' involvement with Carbajal in the marijuana business beginning
in 1997 when Carbajal came to Duggins for an interview. (R.II, 288); and how
the investigation revealed through hearsay that actually 223 Latigo Drive does
not exist, but is really 22 Latigo Drive. (R.II, 289). These are but some
of the instances of harmful hearsay evidence that was admitted without objection
from Mr. Hedderman.

      B.    <u>Paul Barstys</u>. Barstys was a Customs Agent who testified to
the following hearsay without objection from Mr. Hedderman: that the testimony
of cooperating individuals resulted in the arrest of Carbajal, and his indictment.
(R.II, 292); that Carbajal used the following addresses, all hearsay, to wit:
1801 E. Jefferson, Stockton, California, 1135 E. 7th Street, Stockton, California,
4629 W. Lane, Stockton, California, 2726 Eagle Rock, Stockton, California,
and 223 Latigo Trail, Silver City, New Mexico, a house raided February 27,
1999. (R.II, 292); Barstys claimed (without objection) that Carbajal orally
confessed to assisting Duggins in transporting marijuana, (R.II, 300), and
paid Hedgecock $80,000 for transporting marijuana. (R.II, 302); that Rosa Carbajal
transported currency "for the organization", which information was based on
the information of a confidential informant. (R.II, 304); how Barstys got the

16

name "Laucho" from other confidential informants. (R.II, 314); how from other
confidential informants "we" learned they would off load large quantities of
marijuana from motor homes or dump trucks at the Latigo house to re-weigh it.
(R.II, 314); how it was "determined" through investigation that trucks rented
to haul marijuana. (R.II, 317); how it was determined through investigation
how Carbajal secured motor homes to use in transporting marijuana. (R.II, 318);
and how it was "determined through investigation" that Julian Guillen and Juan
Carbajal would buy vehicles at insurance auto auctions, and this was learned
through the hearsay of Guillen's statements. (R.II, 322-350). And again, all
of these hearsay statements were admitted before the jury without objections
from Mr. Hedderman.

      C.    <u>Armen Avakian</u>. Avakian was another agent investigating this
case, and through his hearsay the jury learned: that information from Jullian
Guillen showed he ran the Tune and Lube and used it to off load marijuana.
(R.II, 355); and information received at the end of 1998 showed a Pace Arrow
motor home in Stockton, California. (R.II, 357), and none of this hearsay was
objected to by Mr. Hedderman.

      D.    <u>Diane Hedgecock</u>. This witness was called to testify for
her deceased husband about loads of marijuana that was transported by Greg
Hedgecock for Carbajal. (R.II, 415); about 500-600 lbs in Feb. 1998. (R.III,
444) from New Mexico to Stockton, California, Feb. 14, 1998. (R.III, 446-447);
on March, 1998, at Continental Divide National Park. (R.III, 454); to Stockton,
California, 400-500 lbs. (R.III, 457); three loads from Continental Divide
National Park, April 22, 1998, June 20, 1998 and July 18, 1998. (R.III, 459);
in November, 1998 from the Latigo Drive house to Stockton, California, 12-1500
lbs. (R.III, 474); from Rock Park, New Mexico to Stockton, Califronia, 600
to 700 lbs. in April, 1999. (R.III, 481-483); and interestingly, Mr. Hedderman
finally woke up and made a HEARSAY OBJECTION to Diane Hedgecock testifying
to what Mr. Long had told her. (R.III, 503-504).

E.    <u>Veronica Morton</u>. Her entire testimony was unobjected to
hearsay, to wit: about how Duggins told her he helped transport drugs for
"Manuel". (R.III, 562); about how Duggins referred to Carbajal as "the Boss".
(R.III, 564); about how Rache told her it was time to weigh the marijuana on
one occassion. (R.III, 569); and how Glenn Duggins told her he was pissed about
his money for hauling marijuana. (R.III, 573).

## B. Arguments & Authorities

1.    Carbajal has made the claim that his counsel rendered ineffective
assistance. On habeas review prior findings of fact are reviewed for clear
error, while legal conclusions drawn from those facts are given independent
review. The standard is proof by a preponderance of the evidence, and the burden
is on Carbajal. ID., JOHNSON v ZERBST, supra., at 304 US at 468-69.

2.    Claims of ineffective assistance are weighed against the two prong
test set forth in STRICKLAND v WASHINGTON, 466 US 668, 697 (1984). The standard
is (1) whether counsel's performance fell below an objective standard of reason-
ableness to be expected of professional attorneys, and (2) whether there is
a reasonable probability that the outcome of the proceedings would have differed.
Whether counsel was ineffective is a question of mixed law and fact given indepen-
dent review. ID., STRICKLAND.

3.    A claim of ineffective assistnace is not a vehicle for placement
of blame, but a measure of prejudice to the defendant. ID., STRICKLAND, at
687. Counsel is expected to independently investigate all the facts and cir-
cumstances of the case and all laws pertaining to the case. ID., STRICKLAND,
at 690-91. Counsel is expected to identify defenses to both guilt and sentence.
ID., STRICKLAND, supra., at 691. In short, counsel is expected to prepare,
and counsel is legally presumed to have done so. ID., STRICKLAND, at 689-91;
BURGER v KEMP, 483 US 776, 794-95 (1987). Yet, counsel is also expected to
advise the defendant of the viability of the defense options counsel has iden-
tified. ID., STRICKLAND, supra., at 688; HILL v LOCKHART, 474 US 52, 59-60
(1985).

13

4.    As for claims that any specific defense was not identified, pre-
judice can be shown by demonstrating the merit of the defense. ID., HILL, supra.
at 59; KIMMELMAN v MORRISON, 477 US 365, 375-76 (1986).  As for claims that
a sentence specific defense was not identified, prejudice can be show by a
single extra day in prison. GLOVER v US, 531 US 198 (2001).

5.    Strickland Prong #1:  First, this Court must answer whether Mr.
Hedderman's "....performance fell below an objective standard of reasonableness
to be expected of professional attorneys."  Notwithstanding the fact that Mr.
Hedderman never objected to a single matter of hearsay, and Mr. Hedderman allowed
the government to put its entire case on through this hearsay, otherwise inadmis-
sible, Mr. Hedderman began his practice before this Court with lies and misrepre-
sentations.  He appeared as a criminal, committing crimes before this Court
each and every time he opened his mouth as "counsel" for Carbajal.  He lied
to the Court, and by any measure, this "... performance fell below an objective
standard of reasonableness to be expected of professional attorneys."

6.    Strickland Prong #2:  Second, this Court must answer the question
of whether the second prong of STRICKLAND can be met, the outcome determinative
test.  Thankfully, this Court will not have to go through the painstaking process
of determining whether the outcome of Carbajal's trial would have differed.
Those questions have, thankfully, already been answered.

This Court cannot consider the performance of a person who was not authorized
to practice law before it. Such consideration is contrary to the framework
established by the Supreme Court in STRICKLAND, surpa., including that a licensed
attorney in good standing is presumed to have reasonably represented the defendant.
The STRICKLAND requirment, in Prong #2, of the showing of prejudice results
from the presumed fundamental reasonableness of the structure of the trial,
including that the defense counsel was licensed and in good standing.  The
lack of a licensed attorney in good standing for Carbajal eliminated the pre-
sumed fundamental reasonableness of his "attorney's" representation. Consequently,
the trial cannot be presumed reasonable, and in such instance, there is a per se

19

prejudice to Carbajal. ID., STRICKLAND, supra., at 466 US at 692. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." US v NOVAK, 903 F2D 883, 890 (CA2 1990); SOLINA v US, 709 F2D 160 (CA2 1983); HARRISON v US, 387 F2D 203, 212 (DCCA 1967). Carbajal was not represented by "counsel". "Prejudice" is presumed. The judgment of conviction is "void". ID., JOHNSON v ZERBST, supra., at 304 US at 468.

WHEREFORE, Carbajal prays that this Court enters an Order vacating the judgment of conviction in this case, to the end that Carbajal is granted a new trial. If the Court is inclined to deny the relief sought, herein, Carbajal prays that the Court first grant an evidentiary hearing so that Carbajal can be permitted the opportunity to develop this issue for appeal. In the event that Carbajal shall be denied relief, Carbajal prays that this Court enters written FINDINGS OF FACT and CONCLUSIONS OF LAW in support of such order. Carbajal prays for any and all such other relief to which he may show himself entitled. Carbajal prays for general relief.

V.

### CARBAJAL WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL & APPELLATE COUNSEL FAILED TO NOTE & ARGUE THAT CARBAJAL'S CONTINUING CRIMINAL ENTERPRISE CONVICTION VIOLATED DUE PROCESS

#### A. Statement of Facts

1. Carbajal was indicted in Count 1 of the Sixth Superceding Indictment with committing a continuing criminal enterprise violation of 21 USC § 848(a), Count II with conspiring between November, 1997 and April 20, 2000 to possess with intent to distribute marijuana in excess of 1,000 kilograms, with Glenn Eugene Duggins, Juan Manuel Carbajal-Moreno, Jose Armando Carbajal Moreno, Rachel Alba Contreras, Jose Angel Juardo-Chavez and Rose Elena Carbajal-Moreno; in Count III through VIII with possession with intent to distribute marijuana in the following combinations of co-defendants, to wit:

20

3.    The District Court's jurisdiction was defined ab initio.  The
government sought and obtained an indictment, charging an offense, in Count
I, engaging in a continuing criminal enterprise, and in Counts III through
VIII, the series of crimes to which Carbajal was supposed to have committed
in violation of 18 USC § 848(a).  It was the offense(s) charged in the indict-
ment that defined the Court's subject matter jurisdiction.

4.    The indictment charged Carbajal committed the underlying offenses
set out in Counts III through VIII with only three, as opposed to five, other
persons.  Carbajal committed the underlying crimes, alleged to be the series
of crimes to constitute a "continuing criminal enterprise" with **Jose Angel
Juardo-Chavez, Rachel Alba Contreras and Glenn Eugene Duggins, AND NONE OTHER.**

5.    The government proved beyond a reasonable doubt that Carbajal com-
mitted the predicate "series of violations" alleged in the indictment, but
the "series of violations" alleged in the indictment were not "in concert with
five or more other persons with respect to whom [Carbajal] occupied a position
of organizer, a supervisory position , or any oher position of management...".
21 USC § 848 (a)(2)(A).

6.    Trial "counsel" made no objection at all.  Appellate counsel objected
that Carbajal had to have committed each underlying crimes in the series of
crimes that comprised the continuing criminal enterprise with five other persons,
a claim that we know, now, was clearly "frivolous" as a matter of law as
precluded by the stare decisis of the Supreme Court from 1999, two years
prior to Carbajal's trial.

7.    But the reality is that the indictment did not charge Carbajal
had committed the underlying crimes that comprised the series of crimes that
constituted a continuing criminal enterprise **with five persons,** not per crime,
but including all of the crimes alleged to heve been committed in the series
of crimes constituting the continuing criminal enterprise.

8.    It is this precise argument that is of first impression in this

21

Circuit. In US v ALMARAZ, 306 F3D 1031, 1039-1040 (CA10 2002) the Tenth

Circuit held that the jury is not limited to considering only those acts for

which it returned a guilty verdict when determining which acts make up the

"continuing series of violations" with five or more people. However the Court

left open the precise issue raised by Carbajal, herein, to wit:

> "...This does not end our analysis, however. RICHARDSON did
> not indicate which violations the jury can consider when
> determining whether the defendant organized, supervised or
> managed five or more people. In this case we have already
> concluded the jury is not limited to considering the con-
> victed offenses. However, these questions remain: **Is the
> jury limited to those violations alleged specifically in
> the indictment** ... Do the violations need to be alleged
> in the indictment at all if the government presents suf-
> ficient evidence the violations occurred? We leave these
> **thorny** questions for another day **because the government
> alleged specific violations in the indictment, and as
> we discussed below, Mr. Almaraz organized, supervised or
> managed at least five persons during the course of the
> specific violations alleged in the indictment.**"

ID., ALMARAZ, supra., at 306 F3D at 1039-40. That is not the case with Carbajal.

    9.   Carbajal is not alleged (in the indictment) to have committed a

series of violations with five persons even considering all of the violations

alleged in the indictment in their entirety. Therefore, it violates due process

that Carbajal was convicted for a crime for which he was not lawfully charged

by indictment and pleaded not guilty.

    10.   The confusion probably arose from the inclusion in the indictment

Count II, the conspiracy count. However, at the time that the Sixth Superceding

Indictment was returned, and when Carbajal was arraigned on that indictment

and pleaded "not guilty", it had been almost exactly two years since RICHARDSON

had been decided. The government was certainly on notice of Rutledge v US,

517 US 292, 300, 307 (1996), decided a full five years prior, in which the

Supreme Court found that the Double Jeopardy Clause of the Fifth Amendment

precludes a defendant being convicted of both a 21 USC § 846 and a 21 USC §

848 violation. Carbajal's case was remanded for that very principle. And yet,

the government persisted, and took advantage of Carbajal's non-lawyer lawyer,

and went to trial on Count I and II, in the same trial, and asked for a conviction both, from the same jury, and the government even allowed Carbajal to be sentenced on both convictions. The benefit from such "trial strategy" has already been explained. The prejudice to Carbajal is presumed. Afterall, the government consciously obtained convictions in violation of Double Jeopardy protections of Amend. V., U.S. CONST.

11.   At any rate, as a result of a cumulation of error, counsels' rendering ineffective assistance in violation of the Sixth Amendment, and the government's violating Double Jeopardy, in violation of the Fifth Amendment, Carbajal was convicted of engaging in a continuing criminal enterprise, a crime for which he was not lawfully charged by indictment, as he was never charged with having committed a series of crimes with five persons. As a result, the District Court acted outside its subject matter jurisdiction, violated due process thereby, and should never have permitted Carbajal to be convicted for this crime, much less imposing sentence for a crime for which he should never have been committed.

WHEREFORE, Carbajal prays this Court enters an Order vacating the judgment of conviction in this case, to the end that Carbajal is granted a new trial. In the event this Court denies the relief requested, Carbajal prays that the Court enters written FINDINGS OF FACT and CONCLUSIONS OF LAW in support of such order, as to each and every, all and singular, the issues raised by this memorandum of arguments and authorities. Carbajal prays this Court grants unto Carbajal all the relief to which he may show himself entitled. Carbajal prays for general relief.

## V.

### Conclusion

Carbajal was represented by a "criminal" at trial, a criminal who had surrendered his law license months before he even signed on to represent Mr. Carbajal in this case. In order to even be allowed to participate he had to

knowingly, intelligently and voluntarily commit fraud upon this Court by giving this Court the impression that he was in good standing with the State Bar of California. He was not, having surrendered, for multiple instances of misconduct brought about, allegedly, due to his greed and dependence upon alcohol. As the repeated acts of professional misconduct kept piling up, Mr. Hedderman finally surrendered his license. But he never told Carbajal. He never told this Court. No, he proceeded to sit on his hands in Carbajal's trial , failing to file a motion,failing to challenge the Double Jeopardy violation that was clear from Supreme Court precedent from five (5) years prior to trial, failed to crossexamine witnesses, investigate or do even the very rudiments of representing his client. And the reason for this is now, painfully, clear. Mr. Hedderman was engaged in a crime while acting as "counsel" for Carbajal, stealing one last fee before his reign of greed was to end.

Mr. Hedderman committed obstruction of justice in open court, blatantly and obviously, in front of the Assistant United States Attorney himself. And no one, not the government, and not even this Court, raised a finger to stop him. All that had to be done was to make him comply with the Local Rules of this very Court, and provide proof that he was in good standing with the Bar of "some state". This the Court did not do. This the government did not demand. And the result is that Carbajal was represented by a non-lawyer, committing a crime, and rendering ineffective assistance at the same time.

Now, however, these facts are known to the Office of the United States Attorney for the District of New Mexico. Along with prosecuting Mr. Hedderman, the government should, at a bare and forgiving minimum, confess error and agree that Carbajal is entitled to a new trial. Given the abject violations of the Fifth Amendment protections against Double Jeopardy, however, it is unlikely the government will do what it ought to do.

Accordingly, it falls to this Court. The violations are clear, unequivocal and the prejudice is presumed. Relief should be granted. A new trial should

24

be ordered.

Respectfully submitted,

Juan Manuel Carbajal
Reg. No. 12367-097
F.C.I. Texarkana (A-2)
P.O. Box 7000
Texarkana, Texas 75505-7000
MOVANT PRO SE

## VERIFICATION

I, Juan Manuel Carbajal, being the movant in this case, acting pro se, declare under penalty of perjury, that the statements made herein are within my personal knowledge, and they are true and correct, based upon my knowledge, information and belief. I was assisted by another inmate in the preparation of this motion, and the motion and its claims have been explained to me fully.

Date:  June 6, 2006

Juan Manuel Carbajal
Declarant/Movant Pro Se

## CERTIFICATE OF FILING BY MAIL

I, Juan Manuel Carbajal, certify that the original and two copies of the foregoing motion to vacate sentence, and memorandum of arguments and authorities, was duly filed by mail, by depositing same in the institution's mail depository for legal mail, first class postage prepaid, and addressed to: Office of the Clerk, United States District Court, District of New Mexico, UNITED STATES COURTHOUSE, 333 Lomas NW, Suite 270, Albuquerque, New Mexico 87102.

Date:  June 7, 2006

Juan Manuel Carbajal
Movant Pro Se

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing motion to vacate sentence and memorandum of arguments and authorities was duly served upon the government by depositing same in the institution's mail depoitory for legal mail, first class postage prepaid, and addressed to:  Gregory B. Wormuth, Assistant U.S. Attorney, 555 S. Telshor, Suite 300, STATE NATIONAL BANK BUILDING, Las Cruces, New Mexico 88011.

Date: June 7, 2006

Juan Manuel Carbajal
Movant Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBURQUERQUE DIVISION

JUAN MANUEL CARBAJAL                     §
                                         §
vs.                                      §          CIVIL ACTION NO. _____
                                         §
UNITED STATES OF AMERICA                 §

INDEX OF EXHBIITS IN SUPPORT OF MOTION TO VACATE SENTENCE
PURSUANT TO 28 USC § 2255 BY A PERSON IN FEDERAL CUSTODY

### Verification

I, Juan Manuel Carbajal, under penalty of perjury, declare that the exhibits appended hereto are true and correct copies of the originals.

_____
Juan Manuel Carbajal
Declarant/Movant Pro Se

### Index

Ex. A:    State Bar of California record recapping the history of John
          G. Hedderman

Ex. B:    Westlaw. Com display of judgment entered against John G. Hedderman

Ex. C:    Receipt from State Bar Court of California for records obtained

Ex. D:    State Bar Court, State Bar of California, Notice of Failure to
          Respond issued to John G. Hedderman

Ex. E:    Allegations against Mr. Hedderman and his response(s)

Ex. F:    John G. Hedderman's AA meeting reporting record

Ex. G:    Voluntary resignation of John Gerard Hedderman of his license to
          practice law in California

Ex. H:    John Hedderman's fraudulent Application to Appear as Counsel
          Pro Hac Vice filed in US v CARBAJAL, Case No. CR-99-777

Ex. I:    Suspension of John Hedderman from practice, for one year, as of
          August 30, 2000

Ex. J:    Order Provisionally Granting Permission to Appear Pro Hac Vice
          entered January 24, 2001

Ex. K:    Local Rules of practice for attorneys residing outside the District

Ex. L:    Entry of appearance of Local Counsel, Carmen E. Garza

E.  M:    Order and Judgment: US v CARBAJAL, issue February 5, 2005.

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**